UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,          )
                               )
            Plaintiff,         )
                               )
v.                             )  Civil Action No. 06-2034 RWR
                               )
SOCIAL SECURITY                )
ADMINISTRATION,                )
                               )
            Defendant.         )
_____)

## MOTION FOR SUMMARY JUDGMENT

This is a Freedom of Information Act case in which the
plaintiff challenges the withholding from release by defendant,
the Social Security Administration, of the records plaintiff
sought.  These records, which contain tax return information,
were withheld pursuant to Exemption (b)(3) of the FOIA, 5 U.S.C.
§ 552(b)(3), which permits the withholding of documents that are
specifically exempted from disclosure by another federal statute.
Here, the withholding was commanded by a section of the Internal
Revenue Code, 26 U.S.C.§ 6103, which generally prohibits the
public release of tax return information.

Pursuant to Fed. R. Civ. P. 56, defendant moves for summary
judgment.  As grounds for this motion, defendant asserts that
there are no genuine issues of material fact in dispute and that
defendant is entitled to judgment as a matter of law.  A
memorandum of points and authorities, a statement of genuine
issues of material fact not in dispute, and a proposed order

granting the relief sought are attached hereto.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
              /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,              )
                                   )
            Plaintiff,             )
                                   )
v.                                 )  Civil Action No. 06-2034 RWR
                                   )
SOCIAL SECURITY                    )
ADMINISTRATION,                    )
                                   )
            Defendant.             )
_____)

DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, through its undersigned counsel, respectfully
submits, in accordance with LCvR 56.1, the following statement of
material facts as to which there is no genuine issue to be tried:

1.   Judicial Watch filed the FOIA request at issue in this
case by a letter dated June 6, 2006.  Exhibit 1 to Exhibit A
(Burrows declaration) to defendant's memorandum in support of the
motion for summary judgment, hereafter referred to as Exhibit A.

2.   The request sought the following information:

> All records detailing the top 100 U.S.
> employers receiving the highest number of
> Social Security number mismatches, as
> described by the Social Security Adminis-
> tration's Code V letter program ("EDCOR").
> Specifically, we seek a listing of the top
> 100 U.S. employers by number of "no match"
> instances/notification.  Should U.S.
> employers be identified by some other
> enumeration (i.e. top 10, top 50, etc.) we
> seek those records as well.

Exhibit 1 (June 6, 2006, letter) to Exhibit A.

3.    The FOIA request specified that the time frame it covered was from January 1, 2001, to the present.  Id.

4.    Defendant responded to the FOIA request by a letter dated June 29, 2006, which declined to comply with the request. The reason for this response was spelled out in the letter:

> "No-match" instances/notifications are considered tax return information which the Internal Revenue Code (IRC) prohibits SSA from disclosing.  We receive employment information from tax returns filed with the Internal Revenue Service (IRS).  "No-Match" instances/notifications are generated by SSA based on employment information SSA receives from the IRS.  Under the IRC, this information is considered to be tax return information (26 U.S. § 6103).  The IRC generally prohibits us from disclosing this information for other than Social Security purposes.  The FOIA does not require disclosure when another law prohibits it (5 U.S.C. § 552(b)(3).

Exhibit 2 (letter to plaintiff from defendant's Freedom of Information Officer, dated June 29, 2006),[1] to Exhibit A.

5.    Plaintiff administratively appealed the denial of its request.  Exhibit 3 (letter from plaintiff to the Social Security Administration's Office of Public Disclosure, dated August 2, 2006) to Exhibit A (Burrows declaration).

6.    This appeal was denied.  Exhibit 4 (letter from the Executive Director of the Social Security Administration's Office

---

1. Employers file Forms W-2 and W-3 with the Social Security Administration, which then provides the information to the IRS. The letter states that the Forms W-2 and W-3 are filed with the IRS because defendant receives the returns on behalf of the IRS and therefore considers them to be from the IRS.

of Public Disclosure, dated October 16, 2006) to Exhibit A

(Burrows declaration).

      7.   This letter explained:

> Employers file the Internal Revenue Service
> (IRS) Form W-2 (Wage and Tax statement)for
> their employees with the Social Security
> Administration.  The Forms W-2 are tax return
> information; SSA processes them under an
> agreement with the IRS.  <u>See</u> 42 U.S.C. § 432.
> In certain instances, the information on a
> Form W-2 submitted by an employer does not
> match SSA records.  SSA notifies the
> employer.  That is, SSA notifies the employer
> of an error on the tax return document.  A
> notice to the employer that there may be an
> error in the Social Security number (SSN) or
> name on the tax return document is frequently
> known as a "no match" letter.

Exhibit 4 to Exhibit A (Burrows declaration).

      8.   The letter further stated:

> Any information on the tax return, including
> whether or not a tax return was even filed,
> is considered to be tax return information.
> <u>See</u> 26 U.S.C. § 6103(b)(2).  As such, SSA
> cannot disclose to the public the names of
> any employers that have filed tax returns or
> any information about whether there may have
> been errors on such tax returns.  The Inter-
> nal Revenue Code (IRC) allows SSA to use this
> information for Social Security purposes and
> does not allow its release for other pur-
> poses.  Under the IRC, this information is
> considered to be tax return information (26
> U.S.C. § 6103).

<u>Id</u>.

      9.   The information plaintiff requested is not generally

maintained by defendant in the form requested by plaintiff.

Exhibit A (Burrows declaration) at ¶ 9; Exhibit B to defendant's

3

memorandum in support of the summary judgment motion (declaration of Charles Liptz, Director of the Employer Wage Reporting and Relations Staff of the Social Security Administration)(hereafter referred to as Exhibit B) at ¶ 10.

10. To create a list of the top 100 employers in terms of no matches would involve significant effort on the part of defendant. Exhibit B (Liptz declaration) at ¶¶ 10 to 15; Exhibit B (Burrows declaration) at ¶ 9.

11. There is one exception to the general rule that defendant does not maintain records showing the "top" employers in terms of mismatches. In 2002, the Treasury Department's Office of Inspector General requested a listing from the Social Security Administration of the top employers in terms of "no matches". Exhibit A (Burrows declaration) at ¶¶ 12-14; Exhibit B (Liptz declaration) at ¶¶ 20-21.

12. This information was requested by the Treasury Department in connection with an investigation to determine whether penalties should be imposed with greater frequency on employers with no matches. Id.

13. The Treasury Department, rather than the Social Security Administration, has enforcement authority as to the filing of incorrect or inaccurate wage reporting information. Exhibit B (Liptz declaration) at ¶ 8.

4

14.  Charles Liptz, the Chief of the Wage Reporting and Relations Staff at the Social Security Administration, created the 2002 document on "no matches." Exhibit A (Burrows declaration) at ¶ 13; Exhibit B (Liptz declaration) at ¶¶ 20-21.

15.  The document contains the names and addresses of the employers, their EINs (employer identification numbers), the total number of bad social security numbers per employer, and the percentage the bad social security numbers constituted of each employer's total reported social security numbers. This was done for the 1999 and 2000 tax years. Exhibit B (Liptz declaration) at ¶¶ 20-21.

16.  Mr. Liptz is unaware of any other document having been created by the Social Security Administration showing similar information. Exhibit B (Liptz declaration) at ¶ 22.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
        /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,            )
                                 )
                 Plaintiff,      )
                                 )
v.                               )    Civil Action No. 06-2034 RWR
                                 )
SOCIAL SECURITY                  )
ADMINISTRATION,                  )
                                 )
                 Defendant.      )
_____  )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In June 2006, plaintiff filed a Freedom of Information Act request with defendant, the Social Security Administration.  The request sought any listing by defendant of the top 100 employers (or any other listing of such "top" employers, e.g., the top 10 or top 50) in terms of "mismatches" between the names and/or social security numbers reported on Forms W-2 and the records maintained by defendant.  The request was denied because the information sought was tax-return information that was exempt from disclosure by a section in the Internal Revenue Code, 26 U.S.C. § 6103, an exemption incorporated into Exemption (b)(3)of the FOIA, 5 U.S.C. § 552(b)(3), which does not require disclosure of records where another statute prohibits such disclosure. Plaintiff appealed the denial administratively; the appeal was denied.  This case followed.

As we explain below, the FOIA request was denied because the records sought by plaintiff are exempt from disclosure by

Exemption (b)(3) of the FOIA, 5 U.S.C. § 552(b)(3) (which exempts records from release under the FOIA that are prohibited from release to the public under any other statute, in this case 26 U.S.C. § 6103, which generally prohibits the public disclosure of tax return information). As also explained below, the information sought by plaintiff qualifies as tax return information.

## I. Factual Background

Judicial Watch filed the FOIA request at issue here by a letter dated June 6, 2006. The request sought the following information:

> All records detailing the top 100 U.S. employers receiving the highest number of Social Security number mismatches, as described by the Social Security Administration's Code V letter program ("EDCOR"). Specifically, we seek a listing of the top 100 U.S. employers by number of "no match" instances/notification. Should U.S. employers be identified by some other enumeration (i.e. top 10, top 50, etc.) we seek those records as well.

Exhibit 1 (June 6, 2006, letter) to Exhibit A hereto, the declaration of Ethel Burrows, Supervisory Social Insurance Specialist in the Office of Public Disclosure, Social Security Administration.

The FOIA request specified that the time frame it covered was from January 1, 2001, to the present. Id. Defendant responded to the request by a letter dated June 29, 2006, which

declined to comply with the request.  The reason for this response was spelled out in the letter:

> "No-match" instances/notifications are considered tax return information which the Internal Revenue Code (IRC) prohibits SSA from disclosing.  We receive employment information from tax returns filed with the Internal Revenue Service (IRS).  "No-Match" instances/notifications are generated by SSA based on employment information SSA receives from the IRS.  Under the IRC, this information is considered to be tax return information (26 U.S. § 6103).  The IRC generally prohibits us from disclosing this information for other than Social Security purposes.  The FOIA does not require disclosure when another law prohibits it (5 U.S.C. § 552(b)(3)).

Exhibit 2 (letter to plaintiff from defendant's Freedom of Information Officer, dated June 29, 2006),[1] to Exhibit A (Burrows declaration).

Plaintiff administratively appealed the denial of its request.  Exhibit 3 (letter from plaintiff to the Social Security Administration's Office of Public Disclosure, dated August 2, 2006) to Exhibit A (Burrows declaration).  This appeal was denied.  Exhibit 4 (letter from the Executive Director of the Social Security Administration's Office of Public Disclosure, dated October 16, 2006) to Exhibit A (Burrows declaration).  This letter explained:

---

1. Employers file Forms W-2 and W-3 with the Social Security Administration, which then provides the information to the IRS. The Social Security Administration considers the returns to be filed with the IRS because it receives the information on behalf of the IRS.

> Employers file the Internal Revenue Service
> (IRS) Form W-2 (Wage and Tax statement)for
> their employees with the Social Security
> Administration.  The Forms W-2 are tax return
> information; SSA processes them under an
> agreement with the IRS.  <u>See</u> 42 U.S.C. § 432.
> In certain instances, the information on a
> Form W-2 submitted by an employer does not
> match SSA records.  SSA notifies the
> employer.  That is, SSA notifies the employer
> of an error on the tax return document.  A
> notice to the employer that there may be an
> error in the Social Security number (SSN) or
> name on the tax return document is frequently
> known as a "no match" letter.

Exhibit 4 to Exhibit A (Burrows declaration).

The letter further stated:

> Any information on the tax return, including
> whether or not a tax return was even filed,
> is considered to be tax return information.
> <u>See</u> 26 U.S.C. § 6103(b)(2).  As such, SSA
> cannot disclose to the public the names of
> any employers that have filed tax returns or
> any information about whether there may have
> been errors on such tax returns.  The Inter-
> nal Revenue Code (IRC) allows SSA to use this
> information for Social Security purposes and
> does not allow its release for other pur-
> poses.  Under the IRC, this information is
> considered to be tax return information (26
> U.S.C. § 6103).

<u>Id</u>.

The information requested by plaintiff is not generally
maintained by defendant in the form sought in the request.
Exhibit A (Burrows declaration) at ¶ 9; Exhibit B hereto
(declaration of Charles Liptz, Director of the Employer Wage
Reporting and Relations Staff of the Social Security Adminis-
tration) at ¶ 10.  To create a list of the top 100 employers in

4

terms of no matches would involve significant effort on the part of defendant.  Exhibit B (Liptz declaration) at ¶¶ 10 to 15; Exhibit A (Burrows declaration) at ¶ 9.

There is one exception to the general rule that defendant does not maintain records showing the "top" employers in terms of mismatches.  In 2002, the Treasury Department's Office of Inspector General requested a listing from the Social Security Administration of the top employers in terms of "no matches".  This information was requested by the Treasury Department in connection with an investigation to determine whether penalties should be imposed with greater frequency on employers with no matches.  Exhibit A (Burrows declaration) at ¶¶ 12-14; Exhibit B (Liptz declaration) at ¶¶ 20-21.  The Treasury Department, rather than the Social Security Administration, has enforcement authority as to the filing of incorrect or inaccurate wage reporting information.  Exhibit B (Liptz declaration) at ¶ 8.

Charles Liptz, the Chief of the Wage Reporting and Relations Staff at the Social Security Administration, created the 2002 document on "no matches."  The document contains the names and addresses of the employers, their EINs (employer identification numbers), the total number of bad social security numbers per employer, and the percentage the bad social security numbers constituted of each employer's total reported social security numbers.  This was done for the 1999 and 2000 tax years.  Exhibit

5

B (Liptz declaration) at ¶ 13.  Mr. Liptz is unaware of any other
document having been created by the Social Security Administra-
tion showing similar information.  Exhibit B (Liptz declaration)
at ¶ 22.

## II. <u>Argument</u>

A.  <u>Section 6103 Of The IRC Is An Exemption (b)(3)Statute.</u>

Defendant asserted Exemption (b)(3), 5 U.S.C. § 552(b)(3),
as the basis for withholding the records sought by plaintiff.
Exemption (b)(3) incorporates the nondisclosure provisions that
are contained in other federal statutes and permits withholding
under the FOIA of records subject to other withholding statutes.
Consequently, the first question is whether 26 U.S.C. § 6103
qualifies as a withholding statute under Exemption (b)(3).
Section 6103 states a general rule that "returns" and "return
information" are confidential, and the statute contains an
elaborate definition of what constitutes return information.  <u>See</u>
<u>Church of Scientology of California v. Internal Revenue Service</u>,
484 U.S. 9, 14-15 (1987).

In the <u>Church of Scientology</u> case, the parties before the
Supreme Court agreed that § 6103 qualified as an Exemption (b)(3)
statute.  The Church of Scientology argued, however, that the
Haskell amendment to the statute meant that the material sought
under the FOIA should be released to plaintiff after the redac-

tion of any identifying information.  The Haskell amendment
provided:

> . . . [S]uch term [return information] does
> not include data in a form which cannot be
> associated with, or otherwise identify,
> directly or indirectly, a particular
> taxpayer.

484 U.S. at 12.

After a discussion of the language of the Haskell amendment
and its legislative history, the Court held:

> that, as with a return itself, removal of
> identification from return information would
> not deprive it of protection under § 6103(b).
> Since such deletion would not make otherwise
> protected return information discloseable,
> respondent [the IRS] has no duty under the
> FOIA to undertake such redaction.

484 U.S. at 18.  The Court also concluded that the Haskell amend-
ment was, in the language of its sponsor, aimed at permitting the
IRS to "continue to release for research purposes statistical
studies and compilations of data, such as the tax model, which do
not identify individual taxpayers."  484 U.S. at 16.

Our Court of Appeals has specifically taken the position
that § 6103 qualifies as an Exemption (b)(3) statute.  Church of
Scientology of California v. Internal Revenue Service, 792 F.2d
146, 150 (D.C. Cir. 1986), affirmed on other grounds, 484 U.S. 9
(1987) .  This conclusion is entirely consis-tent with the
language of the section.

B.   The Information Sought By Plaintiff Is Return Information.

Defendant has withheld the records sought by plaintiff under Exemption (b)(3), because the records sought contain return information of third-parties.  Form W-2 (Wage and Tax Statement) is a statement required to be furnished by an employer to employees with respect to wages paid during a calendar year.  26 U.S.C. § 6051(a).  Employers are required to file an information return for Forms W-2 issued to employees.  26 U.S.C. § 6051(d); 26 C.F.R. § 31.6051-2.  The transmittal form for a return on Forms W-2 is Form W-3.  Each Form W-2 and the transmittal Form W-3 constitute an information return which employers are required to file with the Social Security Administration office indicated on the instructions to such forms.

When not otherwise provided by the Internal Revenue Code, the Treasury Secretary may by regulation prescribe the place for the filing of any return.  26 U.S.C. § 6091.  The Secretary has required that Forms W-2 and W-3 be filed with the Social Security Administration.  26 C.F.R. § 31.6051-2.  This is consistent with 42 U.S.C. § 432, which authorizes the IRS and the Social Security Administration to enter into agreements regarding the processing of Forms W-2 and W-3.  Because the IRS and the Social Security Administration are both authorized to use wage reporting information and because the two agencies wanted to reduce duplication of efforts, they entered into the Combined Annual

8

Wage Reporting Agreement.  43 Fed. Reg. 60158 (December 26, 1978).  Under this agreement, employers file IRS Forms W-2 and W-3 with the Social Security Administration.

The Forms W-2 and W-3 contain, among other things, the employer's name, address, and employer identification number, as well as the employee's name, address, social security number, amount of wages paid, and taxes withheld.  Exhibit B (Liptz declaration) at ¶ 5.  The Forms W-2 and W-3 are "information returns" under § 6103(b)(1) and have been properly designated by the Treasury Secretary to be filed with the Social Security Administration.  It follows that the information summarized on the withheld records is return information, as it is derived from information returns required to be filed by law.

C.  Defendant Is Not Required To Create New Records To Respond To Plaintiff's FOIA Request.

As explained above, the only record now in existence that is responsive to plaintiff's FOIA request is the report prepared by Mr. Liptz for the years 1999 and 2000.  The attached declarations establish that considerable effort would be required for the defendant to create reports for the years subsequent to 2000.  Exhibit B (Liptz declaration) at ¶¶ 11-17; Exhibit A (Burrows declaration) at ¶ 9.  A fundamental principle of the FOIA is that an agency is not required to create records to respond to a FOIA request.  See Krohn v. Department of Justice, 628 F.2d 195, 197-98 (D.C. Cir. 1980).  It follows that defendant cannot be requi-

9

red to create new records that would be, if created, responsive
to the FOIA request.

D.  Segregability And Adequacy Of The Search.

    The FOIA requires that "any reasonably segregable portion of
a record" must be released after appropriate application of the
FOIA's nine exemptions.  As has been explained above, all tax
return information must be withheld from release under Exemption
(b)(3).  It follows that there is no reasonably segregable por-
tion of the records sought by plaintiff that can be released.
The FOIA also requires that a reasonable search for responsive
materials must be made.  Here, no search was legally required
because the records sought by plaintiff were clearly exempt under
Exemption (b)(3), which incorporates 26 U.S.C. § 6103.  In any
event, the declaration of Mr. Liptz, the supervisor of the staff
that handles wage reporting in the Social Security Administra-
tion, establishes that only one document responsive to plain-
tiff's FOIA request exists, a document that is exempt from
disclosure.  Exhibit B (Liptz declaration) at ¶¶ 20-22.

III. Conclusion

    For the foregoing reasons, defendant's motion for summary
judgment should be granted, and this case should be dismissed
with prejudice.

                        Respectfully submitted,

                        JEFFREY A. TAYLOR, D.C. Bar #498610
                        United States Attorney

                              10

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
             /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,            )
                                 )
              Plaintiff,         )
                                 )
v.                               )  Civil Action No. 06-2034 RWR
                                 )
SOCIAL SECURITY                  )
ADMINISTRATION,                  )
                                 )
              Defendant.         )
_____)

<u>ORDER</u>

UPON CONSIDERATION of defendant's motion for summary judgment and the response thereto, it is this ____ day of _____, 2007,

ORDERED that defendant's motion for summary judgment is hereby granted; and it is further

ORDERED that this case is dismissed with prejudice from the docket of this Court.  This is a final, appealable order.


                              UNITED STATES DISTRICT JUDGE

Copies to counsel of record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC                  )
                                     )
                                     )
            Plaintiff,               )
                                     )          Case No. 06-2034 RWR
      v.                             )
                                     )
SOCIAL SECURITY ADMINISTRATION )
                                     )
                                     )
            Defendant,               )
_____      )

## DECLARATION OF ETHEL BURROWS

I, Ethel Burrows, hereby declare as follows:

1)  I am a Supervisory Social Insurance Specialist in the Office of Public Disclosure
    (OPD) of the Social Security Administration (SSA).  OPD is responsible for
    establishing policies and practices to administer the Freedom of Information Act
    (FOIA), 5 U.S.C. ' 552; the Privacy Act, 5 U.S.C. ' 552a; the Internal Revenue
    Code (IRC) provision on disclosure, 26 U.S.C. ' 6103, as it pertains to SSA;
    section 1106 of the Social Security Act, 42 U.S.C. ' 1306; SSA regulations on
    disclosure, 20 C.F.R. Parts 401 and 402; and other disclosure issues.  In addition,
    OPD is responsible for deciding whether to release or withhold records under the
    FOIA.

2)  I have personal knowledge of procedures used in handling FOIA requests for
    information from SSA files pursuant to Title 5 United States Code. section 552.

1

Exhibit A

3) By letter dated June 6, 2006, Christopher Farrell on behalf of Judicial Watch, Inc. submitted an FOIA request to SSA. The request asked for "[a]ll records detailing the top 100 U.S. employers receiving the highest number of Social Security number mismatches...we seek a listing of the top 100 U.S. employers by number of "no match" instances/notification." *See* Exh. 1.

4) In this case I was personally responsible for reviewing the request. Upon review of the request, I concluded that the documents are considered tax return information which the IRC prohibits SSA from disclosing.

5) The requested information would be compiled from data submitted by employers as part of the annual wage reporting process whereby SSA collects an employee's annual wage information for posting to an individual's account to determine eligibility and amount of Social Security benefits for each worker. This information is also used by the Internal Revenue Service (IRS) for tax purposes.

6) SSA maintains this information in a system of records known as the "Earnings Recording and Self-Employment Income System" and has numbered the system of records as 09-60-0059. Disclosures from this system are only permitted on a limited basis in accordance with 26 U.S.C. § 6103.

7) By letter dated June 29, 2006, Willie Polk, Freedom of Information Officer. responded to Plaintiff on behalf of SSA stating that SSA can not release the requested information because 26 U.S.C.§ 6103 prohibits the disclosure of tax return information for other than Social Security purposes. *See* Exh. 2.

8) At the time of the request, I did not perform a search for the requested information because the FOIA at 5 U.S.C. § 552(b)(3) does not require disclosure when another law prohibits it.

9) Additionally, SSA does not maintain the information in the means requested by Judicial Watch, Inc. SSA would have to at least in part manually create the record as requested by Plaintiff.

10) By letter dated August 2, 2006, Plaintiff appealed SSA's denial of the disclosure of information explaining the information was not tax return information but rather statistical data. *See* Exh. 3.

11) By letter dated October 16, 2006, Jonathan R. Cantor, Executive Director of OPD issued a final decision on behalf of SSA denying the disclosure of the requested information based on exemption (b)(3) of FOIA and 26 U.S.C. § 6103. *See* Exh. 4.

12) While preparing a response to the complaint filed by Judicial Watch, Inc., I learned that one document was prepared by SSA in 2002, in response to an investigation by the Treasury Inspector General for Tax Administration.

13) The document was created by Charles Liptz, Director of the Employer Wage Reporting and Relations Staff (EWRRS) of SSA. The document is a chart that lists the 100 employers with the most no matches for the years 1999-2000. It contains employer's EINs, name of the employer, address of the employer, the total number of bad SSNs and the percentage of bad SSNs broken down by tax year examined.

3

14) The chart was compiled from information submitted by employers as part of the annual wage reporting process and is considered tax return information protected by 26 U.S.C. §6103. As such, SSA has no authority to release the information and would withhold the information under 5 U.S.C. § 552(b)(3).

15) I declare under the penalty of perjury that the foregoing is true and correct.

Executed on April 2nd 2007.

Ethel Burrows
Supervisory Social Insurance Specialist
Social Security Administration

4

Exhibit 1



# Judicial Watch

*Because no one is above the law!*

**VIA FACSIMILE AND CERTIFIED U.S. MAIL**

June 6, 2006

SOCIAL SECURITY ADMINISTRATION                 *F02079*
Office of Public Disclosure                                    *foihot*
3-A-6 Operations Building
6401 Security Boulevard
Baltimore, Maryland, 21235
(Fax. No.: 410-966-6645)

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

     Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the Social Security Administration produce the following agency within twenty (20) business days:

- All records detailing the top 100 U.S. employers receiving the highest number of Social Security number mismatches, as described by the Social Security Administration's Code V letter program ("EDCOR"). Specifically, we seek a listing of the top 100 U.S. employers by number of "no match" instances/notifications. Should U.S. employers be identified by some other enumeration (i.e. top 10, top 50, etc.) we seek those records as well.

**The time frame for this request is from January 1, 2001 to present.**

     For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses,

Judicial Watch, Inc. FOIA Request
June 6, 2006
Page 2

statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

Judicial Watch is willing to accept "rolling production" of responsive records as they are identified. Judicial Watch will accept paper or electronic copies of all responsive records.

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

**Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).**

Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. Judicial Watch, Inc. regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

As a member of the news media, Judicial Watch uses the following means, among others, to publish and disseminate its distinctive work to the public:

Judicial Watch, Inc. FOIA Request
June 6, 2006
Page 3

(1)    Judicial Watch maintains an Internet site, www.JudicialWatch.org, where the
public can review records obtained through FOIA and read editorial works prepared by
Judicial Watch, Inc., including news releases, based on FOIA materials. This website is
viewed by over 20,000 people per day on average, and on several occasions, has logged
up to 1,000,000 visitors in a single day.

(2)    Judicial Watch also publishes a monthly newsletter in which it publishes its own
editorial works and presents, analyzes, and explains information it obtains through FOIA.
Judicial Watch, Inc.'s newsletter is sent to approximately 140,000 individuals each
month. The organization also utilizes an e-mail Infonet service that sends out updates of
Judicial Watch's activities over the Internet to almost 14,00 persons.

(3)    Judicial Watch also periodically publishes and disseminates its own distinct
works in the form of books and reports. For example:

• September 1998 – Judicial Watch, Inc. published the *Interim Report on Crimes and
  Other Offenses Committed by President Bill Clinton Warranting His Impeachment
  and Removal from Elected Office*. This 145-page report was accompanied by
  nearly 4,000 pages of supporting documentation and was crafted, in part, from
  the raw materials obtained by Judicial Watch through FOIA requests, among
  among other regular means.

• August 1999 – Judicial Watch published *Filegate Status Report*, which is
  136 pages long and is supported by nearly 1000 pages of documentation.

• March 2001 – Judicial Watch published *The Judicial Watch Florida Recount*,
  an independent, non-partisan analysis of the results of Florida's hotly
  contested 2000 Presidential election based upon a sampling of ballots
  reviewed by Judicial Watch pursuant to Florida's version of FOIA.

• February 2002 – Judicial Watch published *The Judicial Watch 2002
  "State of the Union" Report, Bush Administration Ethics Enforcement:
  "A Failure of Leadership."*

• September 2002 – Judicial Watch published *Fatal Neglect: The U.S.
  Government's Continuing Failure to Protect American Citizens
  from Terrorists.*

• November 21, 2003 – Judicial Watch produced *Analysis of GAO Testimony:
  US Postal Service – Clear Communication With Employees Needed
  Before Reopening of Brentwood Facility*. (GAO-04-2057T/October23, 2003).
  Comptroller General of the United States David M. Walker, in a reply
  To Judicial Watch's Analysis of GAO Testimony, wrote on December
  17, 2003, "We view Judicial Watch as an important accountability
  organization in Washington, D.C."

Judicial Watch, Inc. FOIA Request
June 6, 2006
Page 4

- June 29, 2005 – Judicial Watch produced a special Report *US Border Patrol Survey Analysis*, an analysis of documents produced under FOIA.
  [ http://www.judicialwatch.org/borderpatrolreport.shtml ]

- February 3, 2006 – Judicial Watch held an educational panel at the National Press Club and published a Special Report of the event *A Discussion of Ethics in Washington*
  [http://www.judicialwatch.org/archive/2006/special-report-ethics.pdf ]

- May 9, 2006 – Judicial Watch produced *The Clinton RU-486 Files*, a special report of the Clinton administration's effort to put the abortion drug RU-486 on the market in the United States, based on documents obtained from the National Archives at the Clinton Presidential Library and in the course of a five year FOIA litigation battle between Judicial Watch and the U.S. Food and Drug Administration (FDA).

Judicial Watch also publishes and disseminates its distinctive work by participating in public conferences and seminars, including its own "Ethics in Government" conferences held in Pasadena, California (1999), Washington, DC (2000), and Miami, FL (2001). Judicial Watch hold quarterly education panels at the National Press Club in Washington DC that have been televised by C-SPAN. Past panel discussions have been: "A Discussion of Ethics in Washington," "The Case for Open Government," "Conservative Perspectives on the Alito Nomination," and "The Role of Grassroots Groups in the Supreme Court Nominating Process." Judicial Watch also works with other media organizations to publish and disseminate distinctive work to the public, and representatives of Judicial Watch appear frequently on nationally broadcast television and radio programs. Judicial Watch has been granted press credentials at a number of national conventions and other events. On February 16, 2005, Judicial Watch was rated by the highly respected capitol newspaper *The Hill* as being on of the nation's top ten "watchdogs."

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of the news media. *See National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of the news media in other FOIA litigation. *See Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000).

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is

Judicial Watch, Inc. FOIA Request
June 6, 2006
Page 5

likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch ongoing efforts document the operations and activities of the federal government and to educate the public about these operations and activities. As part of its Transparency Project, Judicial Watch is investigating the submission of employee/employer information to the Social Security Administration regarding employees' Social Security numbers and the resultant Code V letters.

Courts applying the "public interest" fee waiver provision of FOIA typically take into account four factors in determining whether to grant a waiver: (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding. *See D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(I)-(iv). Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely details of employee/employer information submissions to the Social Security Administration, as well as workers whose funds are being placed into the Earnings Suspense File.

Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience. Social Security solvency and the instances of "no match" information submissions bear directly on the current and future operations of the Social Security Administration.

Indeed, the American public deserves full disclosure of the details of U.S. employers with high incidents of "no match" filings. One study indicated that Wal-Mart may have had thousands

Judicial Watch, Inc. FOIA Request
June 6, 2006
Page 6

of Code V letters sent to them[1], and the public deserves to know how many other companies are similarly situated by practice.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about the nature of the Social Security Administration's Code V letter program, nor its implication on the Earnings Suspense File. The records requested by Judicial Watch undoubtedly will shed additional light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days.

Sincerely,

JUDICIAL WATCH, INC.

Christopher J. Farrell

---

[1]Mehata et al. 2003. "Social Security Administration's No-Match Letter Program: Implications for Immigration Enforcement and Workers' Rights". University of Illinois Chicago (Center for Urban Economic Development). Pg. 9

Exhibit 2

# SOCIAL SECURITY

Refer to:
S9H: PN0463

June 29, 2006

Judicial Watch, Inc.
Mr. Christopher J. Farrell
501 School Street, SW
Suite 500
Washington, DC 20024

Dear Mr. Farrell:

This is in response to your Freedom of Information Act (FOIA) request, dated June 6, 2006, for all records detailing the top 100 U.S. employers receiving the highest number of Social Security number mismatches, as described by the Social Security Administration's Code V letter program ("EDCOR"). You specifically seek a listing of the top 100 U.S. employers by number of "no match" instances/notifications from January 1, 2001 to the present.

We cannot comply with your request for the above information. "No-match" instances/notifications are considered tax return information which the Internal Revenue Code (IRC) prohibits SSA from disclosing. We receive employment information from tax returns filed with the Internal Revenue Service (IRS). "No-match" instances/notifications are generated by SSA based on employment information SSA receives from the IRS. Under the IRC, this information is considered to be tax return information (26 U.S.C. § 6103). The IRC generally prohibits us from disclosing this information for other than Social Security purposes. The FOIA does not require disclosure when another law prohibits it (5 U.S.C. § 552(b)(3)).

There is no fee for processing this request.

If you disagree with this decision, you may request a review. Mail your appeal within 30 days after you receive this letter to the Executive Director for the Office of Public Disclosure, Social Security Administration, 6401 Security Boulevard, Baltimore, Maryland 21235. Mark the envelope "Freedom of Information Appeal."

Sincerely,

Willie J. Polk
Freedom of Information Officer

Exhibit 2 to Exhibit A



# Judicial Watch *forhot*

*Because no one is above the law!*

*4 ref: PN0463*
*2* *(20)*
*4 appl* *F16079*

August 2, 2006

**BY FEDEX & FAX (410-966-0869)**
Mr. Jonathan Cantor
Executive Director
Office of Public Disclosure
Social Security Administration
6401 Security Boulevard, Room 617
Baltimore, MD 21235

### Re: Freedom of Information Appeal

Dear Mr. Cantor:

Introduction

    Judicial Watch, Inc. (hereafter "Judicial Watch") is a non-profit, non-partisan educational foundation that promotes transparency, integrity and accountability in government, politics and the law. Through its educational endeavors, Judicial Watch advocates high standards of ethics and morality in our nation's public life and seeks to ensure that political and judicial officials do not abuse the powers entrusted to them by the American people. Judicial Watch fulfills its educational mission through litigation, investigations and public outreach as a member of the media.

Background

    According to the Congressional testimony of Social Security Administration (SSA) Deputy Commissioner Martin H. Gerry, the SSA sent approximately 120,000 employer "no match" letters in 2004 covering 7.3 million mismatched records.[1]

    On June 6, 2006 Judicial Watch filed a Freedom of Information Act (FOIA) request with the SSA seeking a listing of the top 100 U.S. employers by "no match"

---

[1] Statement of Martin H. Gerry, Deputy Commissioner, Office of Disability and Income Security Programs, Social Security Administration, Before the Senate Judiciary Committee, Subcommittee on Immigration, Border Security and Citizenship, June 19, 2006, found at:
http://www.ssa.gov/legislation/testimony_061906.html      AUG  4 2006

Mr. Jonathan Cantor
Executive Director, Office of Public Disclosure
Social Security Administration
Re: Freedom of Information Appeal
August 2, 2006
Page 2

instances/notifications (as described by the SSA's Code V letter program – "EDCOR") from January 1, 2001 to the present. (See Exhibit 1)  Should the SSA maintain some other enumeration (i.e., top 50 or top 10), we sought those records as well.

In a letter dated June 29, 2006 (and postmarked July 3, 2006), which Judicial Watch received on July 6, 2006, SSA Freedom of Information Officer Willie J. Polk wrote: "We cannot comply with your request for the above information. 'Non-match' instances/notifications are considered tax return information which the Internal Revenue Code (IRC) prohibits SSA from disclosing." In his FOIA denial, Mr. Polk identified your office as the administrative review authority for FOIA appeals and set a 30-day limit for action on our part. (See Exhibit 2)

This letter serves as Judicial Watch's administrative appeal of Mr. Polk's denial of our FOIA request.  We seek review and reconsideration of our FOIA request and the production of requested records under the provision of 5 U.S.C. §552.

Discussion

Judicial Watch does not seek "tax return information" which the Internal Revenue Code (IRC) prohibits the SSA from disclosing.  The information sought by Judicial Watch is strictly administrative in nature and consistent with the statistical and research data defined and discussed in 20 C.F.R. §401.165.  No financial or tax data is being sought, nor do we seek any information used to make any return determination.  We are simply interested in a statistical listing of the number of instances a recorded administrative act occurred.  Specifically, that statistical listing is the top U.S. employers receiving the most "no match" letters.  According to the SSA Policy Internet site, the letters are merely intended as helpful "customer service" reminders.

The SSA Policy Internet site best characterizes and defines the general, statistical nature of the records addressed in our FOIA request.  Official SSA policy does not even require or obligate a response from an employer to an EDCOR (Code V – no-match letter).[2]  A statistical summary of the top employers receiving these reminders in no way divulges "tax return information."  The fact that the SSA does not even require a response to the "no match" letter from the employer clearly demonstrates the strictly ministerial, non-sensitive, statistical nature of this administrative act.[3]  The "no match" letters are an

---

[2] See:
https://s044a90.ssa.gov/apps10/poms.nsf/517e83681a5eb8b28525688d0058721c/cb5bd717862bf82885256f26000c7319!OpenDocument

[3] Neither the SSA nor the Internal Revenue Service generally penalizes employers who submit inaccurate wage reports. See: SSA Office of the Inspector General Audit Report: "Social Security Number Misuse in

Mr. Jonathan Cantor
Executive Director, Office of Public Disclosure
Social Security Administration
Re:  Freedom of Information Appeal
August 2, 2006
Page 3

educational program of the SSA.  Judicial Watch, as an educational foundation, seeks information concerning your program activities.

The sample text of the "no match" letter itself makes very clear that no negative inference should be drawn from the mere fact that the letter has been issued by the SSA. The SSA Policy Internet page sample letter states:

> **IMPORTANT:**  This letter does not imply that you or your employee intentionally gave the government wrong information about the employee's name or Social Security number.  Nor does it make any statement about an employee's immigration status. [Emphasis in original.]

Judicial Watch is not seeking to obtain "no match" letters, nor do we seek any information contained in "no match" letters (i.e., W-2 data).

Judicial Watch seeks information far less sensitive than data readily available on the SSA Internet website, namely, the SSA Office of the Inspector General (OIG) Audit Report: "Unauthorized Work Social Security Numbers at the Department of Defense," Report No. A-03-05-25127, September 2005.[4]  The report identifies the employer (Defense Department), specific components (e.g., Army, Navy, etc.), number of unauthorized employees, countries of origin, specific wage data, characteristics of unauthorized employees, length of employment, agency findings and recommendations. Arguably, the subject matter and degree of specificity in this report constitutes disclosure of "tax return information" by the SSA OIG, under Mr. Polk's interpretation of the term, and as applied in the denial of our FOIA request.

Another SSA OIG Audit Report provides information closely related to our FOIA request, but falls short with respect to the specificity we seek concerning employers. "Employers with the Most Suspended Wage Items in the 5-Year Period 1997 through 2001," Report No. A-03-03-13048, October 2004, addresses industry-wide patterns for the service, restaurant, hotel and agriculture sectors of our economy in general terms.[5]

---

the Service, Restaurant and Agriculture Industries," Report No. A-08-05-25023, April 2005, page 9, found at: http://www.ssa.gov/oig/ADOBEPDF/A-08-05-25023.pdf

[4] See:  http://www.ssa.gov/oig/ADOBEPDF/A-03-05-25127.pdf

[5] See:  http://www.ssa.gov/oig/ADOBEPDF/A-03-03-13048.pdf

Mr. Jonathan Cantor
Executive Director, Office of Public Disclosure
Social Security Administration
Re: Freedom of Information Appeal
August 2, 2006
Page 4

In our view, the OIG Defense Department report (No. A-03-05-25127) represents a "high end" bracket of detailed information that arguably contains "taxpayer information." The OIG 5-year study (No. A-03-03-13048) is too broad and does not apply to the time period we are interested in studying. It forms the "low end" of the bracket of releasable material. The disclosures in the two SSA reports demonstrate that summarized information related to "no match statistics" can be disclosed and should be made available through FOIA. The information sought in our request falls between the extremely detailed reporting in the Defense Department report and the general, industry-wide survey of the OIG 5 year report. The specific listing we seek is consistent with statistical data reports

Once again: No financial or tax return data is being sought, nor do we seek any information used to make any agency determination. Judicial Watch is not seeking to obtain "no match" letters, nor do we seek any information contained in "no match" letters (i.e. W-2 data).

Statistical records of "no match" letter instances would provide the taxpaying public with a statistical benchmark or yardstick to objectively evaluate the SSA's "educational correspondence" policies and programs. Judicial Watch seeks to evaluate SSA performance over a period of years based upon release of the requested information. The SSA's Internet site provides policy guidance to the agency, employers and the taxpaying public concerning EDCOR Code V letter policy implementation.

Our research indicates that it costs the SSA $300 to correct an item once it is in a "suspense" account, versus the 50 cents it costs the agency to post correct information to a valid earnings record. The information sought by Judicial Watch's FOIA request would educate the American public about the operations of the SSA with respect to this specific government program and its effectiveness.

Therefore, upon review and reconsideration of our June 6, 2006 FOIA request, Judicial Watch requests that you reverse the decision of Mr. Polk and produce the requested records.

Administration

Judicial Watch understands that in accordance with 20 CFR §402.200, a decision on this appeal must be made within 20 working days after your receipt of this letter. The SSA Commissioner or a designee may extend this time limit up to 10 additional working days if one of the situations in §402.140(a) exists, provided that, if a prior extension was used to process this request, the sum of the extensions may not exceed 10 working days.

**Mr. Jonathan Cantor**
**Executive Director, Office of Public Disclosure**
**Social Security Administration**
**Re: Freedom of Information Appeal**
**August 2, 2006**
**Page 5**

Please notify Judicial Watch in writing of any extension, the reason for the extension, and the date by which our appeal will be decided.

Please contact the undersigned should you have any questions or require additional information concerning this appeal.

Conclusion

Kindly reconsider Mr. Polk's denial and grant this FOIA appeal, directing the relevant SSA office to produce records responsive to our June 6, 2006 request.

Thank you for your consideration and cooperation.

Sincerely,

JUDICIAL WATCH, INC.

Christopher J. Farrell
Director of Investigations & Research



# SOCIAL SECURITY

Refer to:
S9H: PO9932

October 16, 2006

Judicial Watch, Inc.
Mr. Christopher J. Farrell
501 School Street, SW
Suite 500
Washington, DC 20024

Dear Mr. Farrell:

I am responding to your Freedom of Information Act (FOIA) appeal of August 2, 2006, concerning your request for a listing of the top 100 U.S. employers by number of "no match" instances/notifications from January 1, 2001 to the present.

After careful review, I agree with Mr. Polk's decision. As stated, we cannot comply with your request for the above information. We cannot agree with your conclusion that this information is not "tax return information". Employers file the Internal Revenue Service (IRS) Form W-2 (Wage and Tax statement) for their employees with the Social Security Administration (SSA). The Forms W-2 are tax return information; SSA processes them under an agreement with the IRS. See 42 U.S.C. § 432. In certain instances, the information on a Form W-2 submitted by an employer does not match SSA records. SSA notifies the employer. That is, SSA notifies the employer of an error on the tax return document. A notice to the employer that there may be an error in the Social Security number (SSN) or name on the tax return document is frequently known as a "no match" letter.

Any information on the tax return, including whether or not a tax return was even filed, is considered to be tax return information. See 26 U.S.C. § 6103(b)(2). As such, SSA cannot disclose to the public the names of any employers that have filed tax returns or any information about whether there may have been errors on such tax returns. The Internal Revenue Code (IRC) allows SSA to use this information for Social Security purposes and does not allow its release for other purposes. Under the IRC, this information is considered to be tax return information (26 U.S.C. § 6103). As previously stated, the IRC generally prohibits us from disclosing this information. The FOIA does not require disclosure when another law prohibits it (5 U.S.C. § 552(b)(3)).

*Exhibit 4 to Exhibit A*

Although you draw parallels between the information found in two SSA Office of the Inspector General (OIG) audit reports posted on the internet to the information you are seeking under the FOIA, the legal framework under which those reports are issued has a significant impact on the outcome. The major difference is that the information gathered by the OIG in its internal reviews of SSA operations is designed to help SSA eliminate fraud, waste and abuse in Agency programs. OIG's mission is to strive for continual improvement in SSA's programs, operations and management. To accomplish this mission, the OIG directs, conducts and supervises audits, evaluations and investigations relating to SSA's programs and operations. Under the audit process, the OIG has access to tax return information as part of its function of helping SSA eliminate fraud, waste and abuse in Agency programs. Therefore, your conclusion that the summarized information related to "no match statistics" that are made available in these reports can and should be disclosed under the FOIA is not correct.

This is our final decision in this matter. If you still believe the decision is incorrect, however, the law permits you to seek review in a district court of the United States.

Sincerely,



Jonathan R. Cantor
Executive Director
Office of Public Disclosure

# SOCIAL SECURITY

Refer to:
S9H: PO9932

October 16, 2006

Judicial Watch, Inc.
Mr. Christopher J. Farrell
501 School Street, SW
Suite 500
Washington, DC 20024

Dear Mr. Farrell:

I am responding to your Freedom of Information Act (FOIA) appeal of August 2, 2006, concerning your request for a listing of the top 100 U.S. employers by number of "no match" instances/notifications from January 1, 2001 to the present.

After careful review, I agree with Mr. Polk's decision. As stated, we cannot comply with your request for the above information. We cannot agree with your conclusion that this information is not "tax return information". Employers file the Internal Revenue Service (IRS) Form W-2 (Wage and Tax statement) for their employees with the Social Security Administration (SSA). The Forms W-2 are tax return information; SSA processes them under an agreement with the IRS. See 42 U.S.C. § 432. In certain instances, the information on a Form W-2 submitted by an employer does not match SSA records. SSA notifies the employer. That is, SSA notifies the employer of an error on the tax return document. A notice to the employer that there may be an error in the Social Security number (SSN) or name on the tax return document is frequently known as a "no match" letter.

Any information on the tax return, including whether or not a tax return was even filed, is considered to be tax return information. See 26 U.S.C. § 6103(b)(2). As such, SSA cannot disclose to the public the names of any employers that have filed tax returns or any information about whether there may have been errors on such tax returns. The Internal Revenue Code (IRC) allows SSA to use this information for Social Security purposes and does not allow its release for other purposes. Under the IRC, this information is considered to be tax return information (26 U.S.C. § 6103). As previously stated, the IRC generally prohibits us from disclosing this information. The FOIA does not require disclosure when another law prohibits it (5 U.S.C. § 552(b)(3)).

Although you draw parallels between the information found in two SSA Office of the Inspector General (OIG) audit reports posted on the internet to the information you are seeking under the FOIA, the legal framework under which those reports are issued has a significant impact on the outcome. The major difference is that the information gathered by the OIG in its internal reviews of SSA operations is designed to help SSA eliminate fraud, waste and abuse in Agency programs. OIG's mission is to strive for continual improvement in SSA's programs, operations and management. To accomplish this mission, the OIG directs, conducts and supervises audits, evaluations and investigations relating to SSA's programs and operations. Under the audit process, the OIG has access to tax return information as part of its function of helping SSA eliminate fraud, waste and abuse in Agency programs. Therefore, your conclusion that the summarized information related to "no match statistics" that are made available in these reports can and should be disclosed under the FOIA is not correct.

This is our final decision in this matter. If you still believe the decision is incorrect, however, the law permits you to seek review in a district court of the United States.

Sincerely,


Jonathan R. Cantor
Executive Director
Office of Public Disclosure

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC )
 )
 )
  Plaintiff, )
 ) Case No. 06-2034 RWR
  v. )
 )
SOCIAL SECURITY ADMINISTRATION )
 )
 )
  Defendant, )
 )

DECLARATION OF CHARLES LIPTZ

I, Charles Liptz, hereby declare as follows:

1) I am the Director of the Employer Wage Reporting and Relations Staff (EWRRS) of the Social Security Administration (SSA). EWRRS serves as the Agency's focal point for annual wage reporting, providing oversight and coordination to the overall wage reporting process. EWRRS is SSA's liaison with the business community and other Federal agencies concerning wage report processing. EWRRS works closely with the Internal Revenue Service (IRS) on all wage reporting issues concerning SSA (e.g., earnings reconciliation and the SSA/IRS Wage Reporting Memorandum of Understanding, etc.).

2) I have personal knowledge of the annual wage reporting process where employer's report individual's annual earnings on Forms W-2, Wage and Tax Statement to SSA. SSA maintains earnings information on every worker to

1

Exhibit B

determine the eligibility and amount of Social Security benefits for each worker. The IRS uses the information for tax administration purposes.

3) I also have personal knowledge of the process SSA follows to notify employers when an employer submits a record(s) that contains name and/or Social Security number (SSN) information that does not agree with SSA's records. SSA calls this educational correspondence (EDCOR) or a Code V letter, though most people refer to it as a "no match" letter. SSA sends a notice to the employer notifying the employer that a discrepancy may exist. SSA attaches a list of the SSNs that do not match SSA's records, information on how to correct SSNs and wage reporting tips.

4) Employers report individual's annual earnings on Forms W-2, Wage and Tax Statements to SSA. Employers send the data to SSA via two means - electronic and paper. In previous years SSA also accepted magnetic media including: tapes, diskettes, CDs and cartridges. Paper data is inputted manually by SSA employees.

5) The information collected from the W-2 includes the Employer Identification Number (EIN), Social Security Number (SSN) and name of the employee, money and tax fields, and other fields on the W-2 form. SSA maintains this information to determine the eligibility and amount of Social Security benefits for each worker.

6) SSA collects the information and posts it to the worker's account at SSA on the numberholder's Master Earnings File (MEF). When the name and SSN

2

information do not match, SSA records the information that can not be posted to a holding file called the Earnings Suspense File (ESF). SSA runs over 23 separate computer routines and other techniques in an effort to properly post the information. Even after the record is posted to the ESF, SSA attempts to determine the name and SSN for the item. When corrected information becomes available, SSA posts the information to the correct account.

7) Employer's who receive Code V EDCOR notices are requested to obtain and provide corrected W-2 information to SSA. SSA also sends a notice to employees to alert them when reported information fails to match SSA's records. Both notices specifically state that the notice does not imply that the employer or employee intentionally provided incorrect information. The notice to the employer specifically cautions that the notices do not make a statement about an employee's immigration status and the notice is not a basis, in and of itself, for taking adverse action against the employee.

8) SSA provides a copy of all W-2 data to IRS regardless whether the name and SSN match. IRS has enforcement authority over Employers who file incorrect or inaccurate wage reporting information. SSA does not have enforcement authority.

9) SSA sends the Code V EDCOR notice to employers who submit a wage report containing more than 10 Forms W-2 that SSA cannot process, and the mismatched forms represent more than one-half of one percent (1/2 percent) of the total Forms W-2 in the report.

3

10) Once data is posted to an individual's account or to the ESF, SSA does not maintain a list of employers with no matches.

11) To create such a list would involve getting the data from the Earnings Control Data Base, based on the verification code of the name/SSN verification routines. In 2002 when the Department of Treasury requested a list for their purposes, two lists were generated: one by the gross number of mismatches and the second by the highest percentage of mismatches. In addition, we limited the initial list to employers that submitted at least 100 W-2s to SSA.

12) To create a list of the top 100 employers with no match information as requested by Judicial Watch, SSA would have to manually program and run an assortment of software routines in order to capture the information for each year and then to link the information for multiple years together and put them into a format that is readable.

13) Specifically, to comply with the request to provide a list of the Top 100 employers that enter items into the Earnings Suspense File is fairly complicated. Over the past five years SSA has made various changes to the wage reporting system including changes to the data bases where SSA maintains current and prior year data, the various storage devices where SSA keeps this data and the various methods used to access this data.

14) SSA maintains data based on Tax Years not calendar years. For example, in 2006 SSA processed wage reporting data (W-2s) for tax year 2005. We do have a method to extract the data from the immediately preceding tax year based on a

4

code in the persub database that indicates that a Code V EDCOR notice was generated. This would use the Earnings Management Information (MI) Operational Data Store (EMODS) system. A series of code would need to be created to manually run the various jobs to extract this data. Asking for the specific data fields would allow SSA to generate a list of all of the Code V EDCOR notices and associated data for each notice sent. Once criteria are established then another series of routines would be needed to sort the data to determine which companies comprise the Top 100 for Tax Year 2005. Our informational technology professionals (IT) estimate that it would take a GS-13 programmer about 30 hours to work on the specifications, write the code, validate the code, run the various jobs to extract the data and then sort it into the Top 100 list.

15) For Tax Years 2004 and 2003, SSA would need to use a similar tough and even more complicated process. In this case data would need to be extracted from the Earnings Data Warehouse (EDW) which has different programmers than those who access the EMODS. Thus, the code created for the EMODS process listed above would need to be rewritten for EDW. The tasks listed would be similar, though not exactly the same. IT estimates that it would take GS-13 programmers about 45 hours total to deliver each years worth of data.

16) It is to the best of my understanding that prior to Tax Year 2003 (Tax Years 2002 and prior), there was no code for the EDCOR notices that SSA can use to simplify the process in obtaining this information. Prior to those years, the persub data

5

base did not exist. At that time SSA was using the Earnings Control Data Base
(ECDB). In addition to the procedures and processes listed above, code would
need to be developed to call to the cartridge data storage units that maintain this
data since it is no longer maintained on Direct Access Storage Devices (DASD).
Since there is no EDCOR indicator, code would need to be written to search each
record in the ECDB to look at the number of invalid items listed on each report.
We would have to sort for each report that lists over 100 items for the initial list.
(When SSA ran similar routines for Tax Year 1999 and 2000 we found over
10,000 reports that met this criteria.) Once the initial list is created, the associated
data would need to be obtained. As in the above processes, there are many more
steps involved then is listed in this brief description. It is estimated that any data
maintained on the ECDB would take GS-13 programmers a total of 80 hours to
deliver each years worth of data.

17) If there is a need to compare data from different tax years then additional
specifications and software routines would need developed and validated. This
would take additional resources and time.

18) SSA only maintains data for 7 years. Any data for prior years would not be
maintained by SSA.

19) In addition to the programmers involved, other SSA personnel such as the System
personnel that work in the Office of Telephone and Systems Operations are
normally involved in running these types of jobs. They maintain the hardware,

6

help with scheduling the jobs, deal with some of the security aspects to determine if an SSA employee has the proper security clearances to utilize this data, etc.

20) In 2002, pursuant to a Department of Treasury Office, of Inspector General, Tax Division investigation to determine if IRS penalties should be imposed with greater frequency on employers for no matches, I created a chart that listed the 100 employers with the most no matches for the years 1999-2000 using the above procedures. The chart listed the employer's EINs, name of the employer, address of the employer, the total number of bad SSNs and the percentage of bad SSNs broken down for each tax year examined.

21) I created the document on behalf of the IRS and the original lists were sent it to them on June, 21, 2002. The information in the chart contains gross generic tax return information that SSA collects for tax administration purposes and for the administration of Social Security programs pursuant to an agreement between the Agencies. It did not contain individual names and SSNs, though it did contain EINs and employer information.

22) I have never created a document for SSA purposes and to my knowledge there is no other document that would list the employers by the most no matches.

23) I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 30 2007.

Charles Liptz
Director, Employer Wage Reporting
 and Relations Staff
Social Security Administration

7