**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC., )
)
Plaintiff, ) Civil Action No. 06-2034 RWR
)
v. )
)
SOCIAL SECURITY ADMIN., )
)
Defendant. )
)

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submit its opposition to the motion for summary judgment of Defendant Social Security Administration ("SSA") and hereby cross-moves for summary judgment on its Freedom of Information Act ("FOIA") claim against SSA. As grounds therefor, Judicial Watch states as follows:

**MEMORANDUM OF LAW**

**I. Introduction.**

On June 6, 2006, Judicial Watch served SSA with a FOIA request seeking access to the following agency records:

> All records detailing the top 100 U.S. employers receiving the highest number of Social Security number mismatches, as described by the Social Security Administration's Code V letter program ("EDCOR"). Specifically, we seek a listing of the top 100 U.S. employers by number of "no match"

> instances/notifications. Should U.S. employers be identified by some other enumeration (i.e. top 10, top 50, etc.) we seek those records as well.[1]

*See* Memorandum of Points and Authorities in Support of Defendant's Motion For Summary Judgment ("Def's Memo"), Exhibit 1.

On June 29, 2006, SSA responded to Judicial Watch's FOIA request with a blanket denial. Specifically, SSA asserted that the Internal Revenue Service ("IRS") considered "no-match" instances and notifications to be tax return information, and, therefore, SSA was prohibited from disclosing such information. *See* Def's Memo, Exhibit 2. SSA's letter failed to state whether it had conducted a search for responsive records.

On August 2, 2006, Judicial Watch filed administrative appeal in which it unambiguously stated that it did not seek return information, but, instead, sought a statistical compilation of data regarding employers who received the highest number of "no match" letters. *See* Def's Memo, Exhibit 2. On October 16, 2006, SSA denied Judicial Watch's appeal, once again asserting that the information requested was tax return information. *Id.* As with SSA's June 29, 2006 letter, SSA's letter denying Judicial Watch's administrative appeal made no mention of whether a search for responsive records had been conducted. *Id.*

Judicial Watch filed suit on November 29, 2006. On January 9, 2007, SSA answered Judicial Watch's Complaint, again asserting that the records at issue were exempt from

---

[1] A "No-match" letter refers to instances in which "the information on a Form W-2 submitted by an employer does not match SSA records. SSA notifies the employer. That is, SSA notifies the employer of an error on the tax return document. A notice to the employer that there may be an error in the Social Security number (SSN) or name on the tax return document is frequently known as a 'no match' letter." October 16, 2006 letter from Jonathan R. Cantor to Christopher J. Farrell, Def's Memo, Exhibit 4 to Exhibit A.

disclosure and admitting that SSA had failed to conduct a search for responsive records. SSA admitted:

> [D]efendant has not conducted a search to determine if it has in its possession documents that contain the information sought by the plaintiff. Consequently, defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that defendant has possession of documents that are responsive to plaintiff's FOIA request.

Answer at ¶ 9.

On February 7, 2007, the parties attended an initial scheduling conference before the Court. During the conference, the Court set a briefing schedule and made clear that SSA needed to conduct a search for responsive records to "make an argument as a matter of law." February 7, 2007 Hearing (Roberts, J.), transcript lines 13-15.

Despite still having failed to conduct a search for responsive records, SSA moved for summary judgment on April 18, 2007.

## II. Argument.

### A. Summary Judgment Standard.

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c). In FOIA cases, the agency decisions to "withhold or disclose information under FOIA are reviewed *de novo* by this court." *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004). In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requestor. *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

For an agency to prevail, it must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

**B. <u>FOIA Framework and 26 U.S.C. § 6103 Application</u>.**

Under FOIA, government agencies have two basic obligations: to conduct a reasonable search and to provide all records responsive to the request unless the records are specifically exempted. FOIA provides a framework of liberal disclosure for agency records and "provides that all documents are available to the public unless specifically exempted by the Act itself." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (footnote omitted). A responsive record must be disclosed except where the government meets its burden of showing that the record fits within one or more specific exemptions. *King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). Exemptions from disclosure "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823. And even where specific exemptions apply, the agency is required to conduct a segregability analysis and determine if any non-exempt portions of the record can be released. *Mead Data Cental v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The only exemption asserted by SSA in this litigation is Exemption 3, which permits an agency to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In order to withhold records under Exemption 3, the exempting statute must require "matters be withheld from the public in such a manner as to leave no discretion on the issue," or establish "particular criteria for withholding," or refer to "particular types of matters to be withheld." *Id.*

Judicial Watch does not dispute that 26 U.S.C. § 6103 is an exempting statute for purposes of FOIA Exemption 3. The statute generally prohibits the disclosure of "any return or return information obtained" by the IRS. 26 U.S.C. § 6103(a). However, the statue also defines the term "return information" very clearly and very carefully:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offence.

26 U.S.C. § 6103(b)(2)(A).

The statute also contains an important exception for "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2)((D). The U.S. Supreme Court has held that the purpose of this language, referred to as the Haskell Amendment, is to insure that statistical studies and other compilations of data can be made public. *Church of Scientology v. Internal Revenue Service*, 484 U.S. 9, 16-17 (1987).

Moreover, the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held that FOIA and 26 U.S.C. § 6103 are "entirely harmonious." *Church of Scientology v. Internal Revenue Service*, 792 F.2d 146, 149 (D.C. Cir. 1986). In *Church of Scientology*, the D.C. Circuit held:

> Section 6103 prohibits the disclosure of certain IRS information (with exceptions for many recipients); and FOIA, which requires all agencies, including the IRS, to provide nonexempt information to the public, establishes the *procedures the IRS must follow* in asserting the § 6103 (or any other) exemption.

792 F.2d at 149 (emphasis added). Without question, nothing in § 6103 relieves an agency from its obligation to search for records or satisfy its other obligations under FOIA.

**C. <u>SSA's Failure to Search</u>.**

FOIA mandates that government agencies make "reasonable efforts to search" for records responsive to a FOIA request. 5 U.S.C. § 552(a)(2)(E)(ii)(C). The law of the D.C. Circuit regarding the reasonableness of an agency's FOIA search is clear. In responding to a FOIA request, an agency is required to show that it made "a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the information requested." *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). An agency is not required to search every record system, but it "cannot limit its search to only one record system if there are others likely to turn up the information requested." *Campbell v. United States Dept. of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998); *Oglesby*, 920 F.2d at 68.

The burden of persuasion as to the reasonableness of a search falls on the agency. *McGhee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). Any affidavit(s) submitted by the agency describing its search for documents must be "relatively detailed and non-conclusory, and . . . submitted in good faith." *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Additionally, if the reasonableness of a search is challenged, as it is in this case, the agency must "demonstrate 'beyond a material doubt' that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

It is uncontested that SSA did not conduct a search for records responsive to Judicial Watch's FOIA request. Def's Memo at 10; Declaration of Ethel Burrows ("Burrows Decl"). at ¶ 8. Rather, SSA asserts that "no search was legally required because the records sought by plaintiff were clearly exempt under Exemption (b)(3), which incorporates 26 U.S.C. § 6103." Def's Memo at 10. This assertion is simply incorrect as a matter of law.

First, as will be explained below, SSA's characterization of the records sought by Judicial Watch as "return information" is erroneous. As both the facts of this matter and the governing law will demonstrate, the records at issue are not return information, but, rather, are a compilation of data that cannot be associated with any particular taxpayer's identity. *See* Section (II)(D), *infra*.

Second, 26 U.S.C. § 6103 provides no exemption from SSA's statutory obligation to conduct a search. As the D.C. Circuit clearly held in *Church of Scientology*, FOIA "requires all agencies, including the IRS, to provide nonexempt information to the public, [and] establishes the procedures the IRS must follow in asserting the § 6103 (or any other) exemption." 792 F.2d at 149. This statement alone demonstrates that SSA is required to conduct a search for responsive records even if it intends to assert that any records it locates may be exempt from production under 26 U.S.C. § 6103.

This conclusion is further supported by the fact that some well-defined exceptions to FOIA's search requirement do exist. One example is the operational files of the National Reconnaissance Office ("NRO"). Section 432a of Title 50 states:

> The Director of the National Reconnaissance Office, with the coordination of the Director of National Intelligence, may exempt operational files of the National Reconnaissance Office from the provisions of section 552 of title 5, United States

> Code, which require publication, disclosure, search, or review in connection therewith.

50 U.S.C. § 432a(a)(1). Nonetheless, a strict reading and application of the statute is required for the exception to apply. In *Aftergood v. National Reconnaissance Office*, 441 F. Supp. 2d 37, 50 (D.D.C. 2006), the Court rejected the NRO's application of § 432a's exception to its Congressional Budget Justification Book. The Court held that the NRO must conduct a search and disclose all non-exempt portions of the record. *Id.*

A second example of an exception to FOIA's search requirement is a request that involves private, third party individuals in relation to a law enforcement investigation. When the records sought implicate Exemption (b)(7)(c) and the requestor has not obtained releases from the private individuals, the agency is not required to search, nor even admit they have responsive records. *See Boyd v. U.S. Marshal Service*, 2001 U.S. Dist. LEXIS 25921 (D.D.C. March 30, 2001); *Burke v. Dep't of Justice*, 1999 U.S. Dist. LEXIS 17542 (D.D.C. September 30, 1999). The Court's concern for the privacy of these private individuals *can* be outweighed by the public interest, however: it is not an automatic exception. *Burke*, 1999 U.S. Dist. LEXIS 17542 at *24-25.

The statute and cases governing these two exceptions are very clear and very narrow. Section 6103 contains no such exception to FOIA's search requirement, and SSA offers no legal authority to support its assertion to the contrary. *See* Def's Memo at 10. SSA is obligated to conduct a search for documents responsive to Judicial Watch's request.

Lastly, SSA's assertion that it is not required to search for responsive records also defies common sense. Judicial Watch has repeatedly made clear that it does not seek return information

regarding any specific taxpayer. Rather, the information requested by Judicial Watch is a statistical compilation of the number of the "no-match" letters sent to employers. Without conducting a search and reviewing any actual responsive records, it is impossible for SSA to conclude that all of the records requested by Judicial Watch constitute tax return information. Clearly, not all information in SSA is return information. *Church of Scientology*, 792 F.2d at 151.

**D. <u>The Records Sought Are Not Return Information</u>.**

After a lengthy discussion of Forms W-2 and Form W-3, which are not the subject of Judicial Watch's FOIA request, SSA sets forth its legal argument in one line: "it follows that the information summarized on the withheld records is return information, as it is derived from information returns required to be filed by law." Def's Memo at 9. SSA's argument is not supported by logic or law.

First, Section 6103 defines "return information" very clearly. The definition begins with "a taxpayer's identity." 26 U.S.C. § 6103(b)(2)(A). This is important because all of the remaining items listed in the definition pertain to a specific, individual taxpayer. For example, "the nature, source, or amount of his income, payments, receipts, [and] deductions" are all in relation to a specific taxpayer. The same can be said for "deficiencies, overassessments, or tax payments." In fact, all of the information contained in the definition of "return information" is related to a specific, individual taxpayer. Judicial Watch's FOIA request did not seek any information regarding a specific, individual taxpayer. Judicial Watch did not seek any taxpayer's identity or any records concerning the "nature, source, or amount of [any taxpayer's] income, deficiencies, overassessments, or tax payments." Judicial Watch did not seek copies of Forms

W-2 or W-3, or copies of actual "no-match" letters sent to the employers. The records sought by Judicial Watch simply do not fall within the statutory definition of "return information."

Second, SSA's assertion that summarized information is *per se* exempt because it is derived from records containing return information is contrary to D.C. Circuit law and 26 U.S.C. § 6103 itself.[2] As demonstrated above, the Haskell Amendment expressly allows the disclosure of statistical compilations. In considering the Haskell Amendment, the U.S. Supreme Court held:

> [T]he purpose of this amendment is to insure that statistical studies and other compilations of data now prepared by the Internal Revenue Service and disclosed by it to outside parties will continue to be subject to disclosure to the extent allowed under present law. Thus the Internal Revenue Service can continue to release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers.
>
> * * *
>
> The definition of 'return information' was intended to neither enhance nor diminish access now obtainable under the Freedom of Information Act to statistical studies and compilations of data by the Internal Revenue Service.

*Church of Scientology*, 484 U.S. at 16-17 (quoting 122 Cong. Rec. 24012 (1976)).

The Supreme Court did not view 26 U.S.C. § 6103 as a bar to the disclosure of statistical data or compilations of data. Indeed, 26 U.S.C. § 6103(b)(2)((D) expressly permits disclosure of "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." Based on the express language of the Haskell Amendment and the Supreme Court's interpretation of that amendment, SSA's assertion that summarized information is exempt from production under FOIA is clearly erroneous.

---

[2] SSA provides no legal authority for its "exemption by association" assertion. Def's Memo at 9.

The records sought by Judicial Watch consist of compilations of statistical information – information that cannot be associated with, or identify, directly or indirectly, any particular taxpayer. In this instance, the particular taxpayer is the individual whose name did not match the Social Security number reported to SSA by his or her employer. Judicial Watch does not seek records that would reveal the identities of the such individuals. Nor does it seek "return information" about such individuals. Judicial Watch only seeks the names of the employers who received the highest number of "no-match" letters from SSA in the requested time periods. Such information is simply a statistical compilation of documents generated by SSA itself.[3]

In fact, in another relatively recent FOIA case, SSA represented to the Court that "no-match" information was not considered return information. *Davis v. Social Security Administration*, 281 F. Supp. 2d 1151, 1156 (N.D. Cal. 2003). In that case, the plaintiff served SSA with a FOIA request seeking records regarding inquiries made to SSA, SSA's responses to those inquiries, and SSA notices informing "employers that social security numbers on their wage reports do not match the corresponding employee's name, date of birth, and/or sex." *Id.* at 1155. SSA advised the court that the IRS recently had changed is policy with regard to "no match" information, and, as a result, it no longer considered such information to fall under the statute. *Id.* at 1156. While it subsequently was determined that SSA lacked any responsive records, the Court clearly considered the change of policy to be important, as it was "the sole basis for the SSA's claim of exemption and this Court's opinion." *Id.* at 1156.

---

[3] SSA does not appear to argue that the identities of the employers receiving the highest number of "no match" letters from SSA is "return information." Receipt of the "no match" letter clearly does not constitute "return information" as defined by 26 U.S.C. § 6103. Employers who submit Social Security information to SSA do so in their capacities as employers, not in their capacities as taxpayers.

For this reason, SSA should immediately produce the 2002 report it compiled for the Treasury Department of no-match statistics for tax years 1999 and 2000. Def's Memo at 5, 9; Declaration of Charles Liptz ("Liptz Decl.") at ¶ 16. Despite having failed to conduct a search, SSA has identified this one responsive record. As sworn to by Mr. Liptz, the record is a chart of "gross generic tax return information"consisting of the 100 employers with the most no matches for the years 1999-2000, that "did not contain individual names and SSN's." Liptz Decl. at ¶¶ 20-21.[4]

**E. <u>SSA's Duty to Produce Responsive Records</u>.**

SSA claims, for the first time, that the records sought by Judicial Watch are "not generally maintained by defendant in the form sought in the request." Def's Memo at 4; Burrows Decl. at ¶ 9; Liptz Decl. at ¶¶ 12-16. SSA argues it is not required to "create" records in response to Judicial Watch's FOIA request. SSA attempts to rely on *Krohn v. Dep't of Justice*, 628 F.2d 195, 197-98 (D.C. Cir. 1980) in support of its argument.[5] However, SSA's argument ignores the fact that FOIA was amended in 1996 to reflect changes in record-keeping technology. As a result, SSA's reliance on *Krohn* is inapposite.

In 1996, Congress amended FOIA's definition of "record" to include electronic records. Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, 110 Stat. 34048,

---

[4] Mr. Liptz states that the 2002 report contains "EINs and employer information." Liptz Decl. at ¶ 21. Judicial Watch has no interest in the EINs and would gladly agree to SSA redacting that information.

[5] *Krohn* predates the 1996 FOIA amendment and concerns a FOIA request dealing with paper records. Producing the records sought by the plaintiff would have required the U.S. Department of Justice to create new, written transcripts gleaned from handwritten notes. 628 F.2d at 198.

3049 (codified as amended at 5 U.S.C. § 552(f)(2)) ("E-FOIA Amendment"). The amended version of FOIA directs agencies to produce "records in ***any form or format requested by the person*** if the record is readily producible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B) (emphasis added). In a recent case applying the E-FOIA Amendment, the D.C. Circuit defined "readily producible" to mean "an agency's technical capability to create the records in a particular format." *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006).

The E-FOIA Amendment applies directly to this case. SSA has sworn, by way of affidavits, that it does not maintain paper copies of the records Judicial Watch sought, but, rather, maintains all of its "no-match" information electronically. Borrows Decl. at ¶ 6; Liptz Decl. at ¶¶ 4, 12.[6] Clearly, 5 U.S.C. § 552(a)(3)(B) applies, and SSA is required to produce the information requested by Judicial Watch, if the data is readily producible by SSA.

SSA, and the Liptz Declaration in particular, discusses in detail SSA's technical capability to produce the records requested by Judicial Watch. With respect to 2005, Mr. Liptz admits that "we do have a method to extract the data from the immediately preceding tax year based on a code in the persub database that indicates that a Code V EDCOR notice was generated." Liptz Decl. at ¶ 14. With regard to 2003 and 2004, Mr. Liptz states that the "data would need to be extracted from the Earnings Data Warehouse" with a similar code application. *Id.* at ¶ 15. Only data from before 2003 appears to be technically more difficult to produce. Mr. Liptz does not state, however, that SSA is incapable of producing data from before 2003. *Id.* at ¶

---

[6] The one exception to this appears to be the 2002 list created by SSA for the Department of Treasury of no-match statistics for tax years 1999 and 2000. Liptz Decl. at ¶ 16.

16. In fact, Mr. Liptz admits that he has already generated no-match data for the years 1999 and 2000. *Id.*[7] SSA has clearly demonstrated the technical capability to generate the data requested by Judicial Watch. The E-FOIA Amendment requires that it must do so.

## IV. Conclusion.

For the foregoing reasons, SSA's motion for summary judgment should be denied and summary judgment should be entered in Judicial Watch's favor. SSA should be ordered to conduct a reasonable search for responsive records and produce any and all such records, as well as the previously identified 2002 report, to Judicial Watch without exemption and without further delay. Finally, SSA also should be required generate and produce any and all responsive data to Judicial Watch pursuant to the provisions of the E-FOIA Amendment, again without exemption and without further delay.

Dated: May 8, 2007

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
Paul J. Orfanedes
D.C. Bar No. 429716
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

*Attorneys for Plaintiff*

[7] Mr. Liptz states that "to my knowledge there is no other document that would list employers by the most no matches." Liptz Decl. at ¶ 22. With all due respect, Mr. Liptz is not in a position to make such a statement, nor is anyone at SSA, since no search been conducted.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC., )
)
Plaintiff, ) Civil Action No. 06-2034 RWR
)
v. )
)
SOCIAL SECURITY ADMIN., )
)
Defendant. )
)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE AND PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to LcvR 56.1, submits the following response to Defendant Social Security Administration's ("SSA") Statement of Material Facts as to Which There is No Genuine Issue:

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed as to the paragraph itself. The footnote was not included in the denial letter referred to in the paragraph and is immaterial.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Immaterial.

10. Immaterial.

11. Undisputed.

12. Immaterial.

13. Immaterial.

14. Immaterial.

15. Undisputed.

16. Denied. SSA had not conducted a search and therefore does not have knowledge to deny that similar records exist.

Judicial Watch respectfully submits the following statement of material facts as to which there is no genuine issue:

1. SSA has failed to conduct a search for the records sought in Judicial Watch's FOIA request. Memorandum of Points and Authorities in Support of Defendant's Motion For Summary Judgment at 10; Declaration of Ethel Burrows at ¶ 8.

Dated: May 8, 2007

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
Paul J. Orfanedes
D.C. Bar No. 429716
501 School Street, S.W., Suite 500
Washington, DC 20024
(202) 646-5172

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., Plaintiff, | Civil Action No. 06-2034 RWR |
| v. | |
| SOCIAL SECURITY ADMIN., Defendant. | |

## [PROPOSED] ORDER

Upon consideration of Defendant's motion for summary judgment, Plaintiff's opposition thereto and accompanying cross-motion for summary judgment, any opposition thereto, and the entire record herein, it is hereby

ORDERED that:

1. Defendant's Motion For Summary Judgment is DENIED;

2. Plaintiff's Motion For Partial Summary Judgment is GRANTED;

3. Defendant is ordered to immediately produce all non-exempt portions of the 2002 report identified by Defendant as being a "no-match" list for tax years 1999 and 2000; and

4. Defendant is ordered to immediately conduct a search for records responsive to Plaintiff's June 6, 2006 FOIA request and to produce any and all non-exempt responsive records to Plaintiff.

SO ORDERED.

DATE: ___________________________

___________________________________
The Honorable Richard W. Roberts
United States District Court Judge