UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2034 (RCL) |
| ) | |
| SOCIAL SECURITY ADMIN., ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Is an employer a taxpayer? That deceptively simple question is the conundrum before the Court today. Plaintiff Judicial Watch, Inc. ("JW") is suing the Social Security Administration ("SSA"), requesting a list of the names and addresses of employers who received the most "no-match" letters during a five-year time period. A "no-match" letter occurs when the SSA detects a mismatch between an employee's name and social security number. The SSA refuses to divulge this information, citing Freedom of Information Act ("FOIA") Exemption 3 as the basis for its refusal. The case is before the Court on the parties' cross-motions for summary judgment. Having reviewed the motions, the oppositions, the replies, the entire record in the case, and the applicable law at length, the Court grants the SSA's motion for summary judgment and denies JW's cross-motion for summary judgment for the reasons that follow.

## II. BACKGROUND

### A. Statutory Framework

FOIA allows the public to gain access to records from a federal administrative agency, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), and represents a

strong Congressional commitment to transparency in government through the disclosure of government information. *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). FOIA strikes a balance between "ensur[ing] an informed citizenry, vital to the functioning of a democratic society," and "legitimate governmental and private interests [that] could be harmed by [the] release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992).

Although FOIA embodies a policy of disclosure, full disclosure cannot always be achieved. 5 U.S.C. § 552(b)(1)–(9) (2006). There are nine exemptions that allow an agency to withhold all or parts of a document. *Id.* While these exemptions allow agencies to withhold information, FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(1). FOIA Exemption 3 is in play in this case—it allows an agency to withhold documents that have been specifically exempted from disclosure by another statute, "provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

The relevant statute at issue here is 26 U.S.C. § 6103, which grants an agency the authority to withhold a document in its entirety simply because it pertains to a confidential tax return or "return information." 26 U.S.C. § 6103(a). The Supreme Court and the District of Columbia Circuit Court of Appeals have held that § 6103 qualifies as a FOIA Exemption 3 statute. *See Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 11 (1987) ("If § 6103 forbids the disclosure of material, it may not be produced in response to a request under FOIA"); *see also*

*Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997) ("That § 6103 is the sort of nondisclosure statute contemplated by FOIA Exemption 3 is beyond dispute").

Section 6103(b) excludes from the category of return information "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2). Known as the Haskell Amendment, this provision allows the IRS to "release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers." *Church of Scientology*, 484 U.S. at 16. In *Church of Scientology*, the Supreme Court clarified that the Haskell Amendment only applies to information that has been "reformulated" into "a statistical study or some other composite product." *Id.* at 13–18. Thus, the Haskell Amendment does not apply to information that an agency simply transfers from one document to another. *Id.* at 13.

### B. Factual and Procedural History

On June 6, 2006, JW submitted a FOIA request to the SSA for a list of the top fifty or top one hundred U.S. employers who received "the highest number of Social Security number mismatches." Def.'s Mot. Summ. J. 3, Apr. 18, 2007, ECF No. 9 ("Def.'s Mot."). JW sought these records for a five-year time period beginning on January 1, 2001 and extending to 2006. Liptz Declaration 4, Ex. B to Def.'s Mot., Apr. 18, 2007, ECF No. 9-2 ("Liptz Decl."). An employer receives a "no-match" letter from the SSA when a mismatch occurs between an employee's name and the social security number on her filed W-2 form. Def.'s Mot. 3; Liptz Decl. 2. The SSA determines which employers will receive "no-match" letters using the W-2 forms that employers file.[1] Def.'s Mot. 4.

---

[1] The SSA collects the following information from W-2 forms: the employer's name and identification number; the employee's name, address, and social security number; and the amount of wages paid. Liptz Decl. 2.

The SSA denied JW's FOIA request by a letter dated June 29, 2006, explaining that "no-match" letters are considered tax return information and are exempt from disclosure. *Id.* at 6. Willie J. Polk, the SSA Freedom of Information Officer assigned to handle JW's request, determined that 26 U.S.C. § 6103 prohibited the disclosure of such a list because the SSA generated this list from tax returns filed with the Internal Revenue Service ("IRS").[2] *Id.* Polk included instructions detailing the procedure for an administrative appeal if JW did not agree with the SSA's assessment of its FOIA request. Letter from SSA to JW 13, Ex. A to Def.'s Mot., Apr. 18, 2007, ECF No. 9-1 (incorporated as Exhibit 2 to Exhibit A) ("SSA Response 1"). JW administratively appealed the SSA's decision, by a letter dated August 2, 2006. Def.'s Mot. 4. The SSA again denied JW's request on October 16, 2006, citing 26 U.S.C. § 6103 as the basis for its refusal. *Id.* at 5. The letter explained that "any information on the tax return, including whether or not a tax return was even filed, is considered . . . tax return information." Social Security Letter 1, Ex. A to Def.'s Mot., Apr. 18, 2007, ECF No. 9-1 (incorporated as Exhibit 4 to Exhibit A) ("SSA Response 2"). The letter concluded by acknowledging that JW could seek review of the SSA's decision in district court. *Id.*

Seeking that review, JW filed a civil action in this Court on November 29, 2006. The SSA filed a motion for summary judgment, Def.'s Mot. 1, arguing that regardless of any arguments to the contrary, an employer list qualifies as "return information." *Id.* at 6–10. In response, JW filed an opposition to the SSA's motion and cross-moved for summary judgment. Pl.'s Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. 1, May 8, 2007, ECF No. 12 ("Pl.'s Cross-Mot."). JW relied on the faulty assumption that employers are not taxpayers to present its main argument: that an employer list qualifies as a "statistical compilation of data," precluding it

---

[2] The SSA processes W-2 forms for the IRS pursuant to an agreement between the two agencies. 42 U.S.C. § 432.

4

from the definition of "return information."[3] *Id.* at 4–14. The Court will resolve this matter by addressing the principal issue, as resolution of JW's secondary arguments are dependent on the determination of whether an employer is a taxpayer. Having fully reviewed the record and the parties' evidence, the Court now turns to the merits of the motions.

## III. LEGAL STANDARD

Summary judgment should be granted when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). This standard requires more than the mere existence of *some* factual dispute between the parties; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Doe v. IRS*, 706 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Anderson*, 477 U.S. at 248).

This Court reviews a motion for summary judgment arising from an agency's decision to withhold or disclose documents under FOIA *de novo*. *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The agency must demonstrate that it "conducted a search reasonably calculated to uncover all relevant documents" and that any withheld material falls within a statutory exemption. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To determine whether material falls within a statutory exemption, the agency may submit

---

[3] This case was subsequently transferred by consent from Judge Roberts to Chief Judge Lamberth on May 5, 2011. Reassigned Case 1, May 5, 2011, ECF No. 27.

5

"affidavits or declarations that describe the withheld material in reasonable detail and explain why it falls within the claimed FOIA exemptions." *Judicial Watch v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004). It must prove that information was not withheld due to agency bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). FOIA exemptions must be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), and if records are improperly withheld, the Court may order their production. 5 U.S.C. § 552(a)(4)(B).

## IV. ANALYSIS

### A. FOIA Protects the Information JW Seeks Because Employers are Taxpayers

The SSA is not obligated to disclose the requested employer list because employers are protected under FOIA Exemption 3. JW presents three arguments to the contrary. The first two arguments contend that an employer list does not qualify as return information because 1) it does not contain "information regarding a specific, individual taxpayer," and 2) JW is merely requesting a list of employers, not actual tax information. Pl.'s Cross-Mot. 9–11. Third, it argues that even if the information is considered "return information," the Haskell Amendment removes the list from the purview of FOIA Exemption 3 because the list qualifies as a "statistical compilation." *Id.* at 5–6, 10–11. As explained below, JW's arguments are fatally flawed because they each rely on the faulty assumption that employers are not taxpayers. Since employers are taxpayers—and identifying these taxpayers, by releasing their names and addresses, would violate § 6103—the SSA has no duty to disclose or produce documents under Exemption 3.

To better understand why this list constitutes "return information," one must understand how the list is created. JW argues that the information it seeks is not "return information" because it is not seeking a copy of a completed W-2 form. *Id.* at 9–10. JW's request, however, asks the SSA to use the information gathered from W-2 forms to create a list of employers who

6

receive the most "no-match" letters. Def.'s Mot. 3. Employers receive "no-match" letters when a mismatch occurs between the social security number that appears on SSA records and an employee's W-2 form. *Id.* at 4. The SSA processes these W-2 forms for the IRS pursuant to an agreement between the two agencies. 42 U.S.C. § 432. The SSA uses the information gathered from the W-2 form to determine which employers will receive "no-match" letters. Def.'s Mot. 4. Regardless of the fact that JW does not seek a copy of an individualized W-2 form, the question before the Court is whether a list generated from the information on W-2 forms constitutes "return information" as defined by § 6103. If such a list qualifies as "return information," then the SSA has no duty to disclose or produce it under Exemption 3.

Section 6103 of the Internal Revenue Code prohibits the disclosure of "return information," which is defined as:

> a taxpayer's identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence or possible existence of liability…

26 USC § 6103(b)(2). The definition of "return information" in this case hinges on a determination of who qualifies as a "taxpayer."[4] Since the Internal Revenue Code defines a "taxpayer" as "any person subject to an internal revenue tax," an employer qualifies as a "taxpayer" if it meets the statutory definition of a "person." § 7701(a)(14). A "person" is defined as an "individual, trust, estate, partnership, association, company or corporation." § 7701(a)(1). Given that JW's employer list is undoubtedly comprised of companies, corporations, and associations—which constitute "persons" under § 7701—the SSA is prohibited from releasing

---

[4] Section 7701 of the Internal Revenue Code provides the relevant statutory definitions for § 6103. 26 U.S.C. § 7701(a) (2006).

7

this list because employers are "taxpayers" and revealing their identity would violate § 6103. *See Thompson Publ'g Grp., Inc. v. Health Care Fin. Admin.*, 1994 U.S. Dist. LEXIS 3285, at *6 (D.D.C. Mar. 15, 1994) (holding that § 6103 prohibited a publishing group, which did not seek specific information regarding an employee's identity, from obtaining a list of employers who employ medicare beneficiaries); *see also Davis, Cowell & Bowe, LLP v. Social Sec. Admin.*, No. C 01-4021, 2002 U.S. Dist. LEXIS 9548, at *23 (N.D. Cal. May 17, 2002) (explaining that "deleting the employees' name or social security numbers would not change the fact that the requested records are derived from specific return information filed by individual taxpayers").

The Haskell Amendment allows an agency to release, for statistical purposes, compilations of data, which do not identify a "particular taxpayer." 26 U.S.C. § 6103(b)(2). As discussed above, JW's request identifies a "particular taxpayer" by seeking an employer list—comprised of companies, corporations and associations—that reveals the identity of employer taxpayers. Therefore, JW cannot use the Haskell Amendment as a vehicle to gain access to confidential tax return information when it is expressly prohibited from doing so under § 6103.

### B. The SSA Did Not Violate Statutory Requirements in Responding to JW's Request

JW's secondary arguments fail in light of the fact that its main premise—that employers are not taxpayers—does not withstand close scrutiny. Although JW argues that the search SSA conducted was insufficient, Pl.'s Cross-Mot. 6–9, the SSA acknowledged the existence of one potentially responsive document.[5] Def.'s Mot. 6. Because this document contains information that identifies a "person,"[6] the Court agrees with the SSA that it does not need to produce tax

---

[5] Charles Liptz, an SSA employee and Chief of the Wage Reporting and Relations Staff, created a document for an investigation the Treasury Department conducted during the 1999 and 2000 tax years to determine whether to impose penalties on employers who received the most "no-match" letters. *Id.* at 7.

[6] Liptz stated that the document he created in response to the Treasury Department's request contained "the names and addresses of the employer, their EIN's (employer identification numbers), the total number of bad social

information. 26 U.S.C. § 7701(a)(1). Once the SSA determined that the information in question constituted return information, it properly withheld it. Furthermore, the SSA is not obligated to create new records for JW. *See Krohn v. Dep't of Justice*, 628 F.2d 195, 197–98 (D.C. Cir. 1980) (explaining that "FOIA…only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create") (quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (1971)). Since neither of the criteria above applies to JW's request, the SSA has no duty to create a new, responsive document.

V. **CONCLUSION**

For the reasons set forth above, the Court grants the SSA's request for summary judgment and denies JW's cross-motion. A separate Order memorializing this Opinion will issue this day.

Signed by Royce C. Lamberth, Chief Judge, on August 1, 2011.

---

security numbers per employer and the percentage the bad social security numbers constituted of each employer's total reported social security numbers." Def.'s Mot. 7.